GRIFFIN, J.
Jessica L. Cole [“Mother”] pro se appeals a non-final order under which the minor child of Mother and William L. Cole [“Father”] is to reside with Father and relocate with Father to the State of Washington. Mother argues that the trial court (1) erred as a matter of law by permitting a witness to testify via telephone over her objection, and (2) abused its discretion in finding that there was a basis to modify the parties’ agreement regarding time-sharing with the minor child to permit Father to relocate the child to the State of Washington.
On January 14, 2009, the trial court entered final judgment of dissolution of the parties’ marriage, which incorporated the parties’ marital settlement agreement. In the martial settlement agreement, the parties provided: “The minor child is in the primary residential custody of the Wife hei’ein and the parties agree that the Wife is the fit and proper person to be awarded permanent primary care, custody and control of the minor child herein.” They also provided: “The parties recognize and agree that it is in the best interest of the minor child that they engage in shared parenting.”
In August 2010, Father filed an emergency motion for temporary relief, requesting that the trial court temporarily name him the primary residential parent. He alleged in part that:
6. The minor child has been residing with the Mother with the Father seeing the minor child on a regular basis.
7. During that time, it has come to the Father’s attention that the Mother has continually placed the minor child in an unsafe environment.
8. The Mother’s boyfriend has been accused of domestic violence.
9. It is the Father’s understanding that there has been currently two no contact order [sic] out between the Mother and her boyfriend.
10. The Mother has continually dropped charges against the boyfriend and at the time of the writing of this motion, the boyfriend is due to return in the home.
11. The Mother is exposing the minor child to this domestic abusive relationship between herself and her boyfriend with no consideration for the best interest of the minor child.
12. The Father is also under the impression that there is some drug use in the Mother’s home.
13. The Father requests that the Court at this time allow the minor child to reside with him in the best interest of the child.
14. The Father has received orders from the Army to go to Washington and has filed a Notice to Relocate with the Court.
15. The Father states that it is in the minor child’s best interest, pursuant to the Florida Statutes, that he be temporarily named parent with whom the child resides with primarily and that he is a fit and proper parent and that he can provide a healthy and stable environment for the minor child.
*1177 At the same time, Father filed a supplemental petition regarding time-sharing of the minor child and other matters. He requested that the trial court modify the final judgment of dissolution of marriage with respect to the designation of primary-residential parent, time-sharing, child support, tax exemption and other matters. Specifically, he requested that the trial court name him primary residential parent and set a specific time-sharing schedule.
Mother filed a verified motion to strike Father’s emergency motion, motion for temporary relief, and objection to notice of intent to relocate. She alleged in part:
3. Former Wife has at all times been and is an excellent mother of the minor child. The minor child is the paramount concern and responsibility of the Former Wife. The Former Wife has nurtured her and primarily provided for her in the Former Husband’s absence. Former Wife has never placed the minor child in harms [sic] way and the minor child has never witnessed or been present when an act of domestic violence has been perpetrated upon the Former Wife. The Former Wife would show that there was an isolated act of domestic violence between the Former Wife and her live in boyfriend for which he was arrested. All charges have since been dismissed. Former Wife would show that the minor child did not witness the act and the child was asleep in her room and not awakened by the act. The Former Wife’s first concern was for the safety of the minor child so after the incident when the child was still asleep the Former Wife woke her and took her to another dwelling away from the controversy. From a neighbor’s home, the minor child did see law enforcement arrive and was told by third parties that the Former Wife’s boyfriend had been arrested. The Former Wife and her live in boyfriend have never previously had an incident of domestic violence occur. As soon as the Former Wife spoke to the Former Husband about the incident, he threatened to remove the minor child from her care.
[4]. The Former Wife requests a schedule of time sharing for when the Former Husband is in town. Former Wife would show that the Former Husband is an active member of the United States Army stationed or in the process of being stationed in Washington State. The Former Husband had not been residing in the State of Florida and has not been maintaining frequent contact with[] the minor child. The Former Husband went to basic training in October 2009 in the State of Georgia, came home for Christmas briefly and had time sharing with the minor child. Former Husband left the State again and returned briefly in February and then again in May, 2010.
[[Image here]]
[5]. Former Wife objects to the Former Husband’s Notice of Intention to Relocate. Former Husband is an active member of the military set to be stationed in the immediate future in the State of Washington. There is no schedule of time sharing which can maintain the time sharing and bond the minor child and Mother have enjoyed. The Former Husband by his own choice has enlisted in the Army subsequent to the parties’ dissolution and has been absent from the child’s life since October of 2009 and has not had frequent contact with her since that time due to his basic training and enlistment. Former Husband does not have stable housing and is currently residing with relatives.
5. All of the minor child’s extended family reside in Central Florida. The child enjoys continual contact and close bonds with her extended family. It *1178 would be detrimental to the minor child for her to be relocated to where ever the Former Husband is from time to time stationed.
(Emphasis in original).
On March 25, 2011, the trial court conducted an evidentiary hearing on Father’s supplemental petition regarding time-sharing of the minor child and other matters, and his petition to relocate with the minor child. It heard testimony from numerous witnesses, including telephonic testimony from Christina Lynn Cole, Father’s current wife and the minor child’s step-mom [“step-mom”]. At the conclusion of the hearing, the trial court made several oral findings and directed the parties each to submit a proposed order.
The court made a finding that Father and step-mom were credible, that some of Mother’s testimony was credible and some was not, that domestic violence did occur, that Mother’s boyfriend choked her, that Mother’s boyfriend’s testimony regarding what happened was not credible, that the other testimony of the bruises that had been on Mother was credible, that the testimony that there were no substances in the house was not credible, that there were substance issues, that the testimony that Xanax sometimes came in between Mother and her parenting was credible, that the substance issues had interfered with parenting on at least one occasion, that allowing illegal substances in the home had interfered with “complete great parenting”, that continuing contact with the boyfriend showed a lack of stability, and that taking the minor child to another place to sleep “was an issue with the court.”
On April 12, 2011, the trial court entered “final judgment,” granting Father’s supplemental petition regarding time-sharing of the minor child and other matters, and his petition to relocate with the minor child.
On appeal, Mother first raises as error that the trial court permitted step-mom to testify by telephone over her objections in contravention to Florida Rule of Judicial Administration 2.580(d). Florida Rule of Judicial Administration 2.580(d)(1) provides:
Generally. A county or circuit court judge may, if all the parties consent, allow testimony to be taken through communication equipment.
As written, under rule 2.530(d)(1), a trial court’s discretion to allow testimony to be taken through communication equipment is triggered only if all of the parties consent. The record reveals that Mother objected to the telephonic appearance of step-mom prior to the hearing and renewed the objection before step-mom’s testimony, but the trial court overruled the objection. Because Mother objected to the telephonic testimony, the trial court erred by overruling her objection and allowing step-mom to testify by telephone. See S.A. v. Dep’t of Children and Family Servs., 961 So.2d 1066, 1067 (Fla. 3d DCA 2007) (“[u]nder ... rule [2.530], trial testimony can be taken by telephone only if all parties consent” because appellant objected “[t]he objection should have been sustained,” and that “[t]he court erred by allowing the officer to appear by telephone”). Citing to the S.A. decision in M.S. v. Dep’t of Children and Families, 6 So.3d 102, 104-05 (Fla. 4th DCA 2009), the Fourth District said:
The court also erred in permitting the Maryland social worker to testify by telephone. Pursuant to Florida Rule of Judicial Administration 2.530(d)(1), “[a] county or circuit court judge may, if all the parties consent, allow testimony to be taken through communication equipment.” Although the trial court thought *1179 that it should have some discretion under this rule, there is no such discretion.
Mother contends that the error cannot be considered harmless because the trial court relied upon step-mom’s testimony in making its factual determinations.[1]
During the hearing, step-mom testified that Mother had told her that she took Xanax when she was stressed; that Mother asked her if she could get any Xanax; that the Mother’s boyfriend had hit Mother and smashed Mother’s phone; that she recalled observing bruises on Mother’s arms a couple of times which Mother said were from playing around with her boyfriend; that on one occasion when Mother picked up the minor child late, Mother informed her that she had taken Xanax and fallen asleep; that Mother had told her that she had taken Xanax, fallen asleep, and the minor child had watched herself; and that Mother had admitted to having drinks at the house while the minor child was in her care.
As relates to step-mom’s testimony, the trial court found:
G. The Court listened to the testimony of the step-mother Christina Cole. The Court evaluated her testimony by many factors including how she testified and its consistency with other evidence. Her testimony is credible and found to be truthful. She testified to the home they created. She testified how she continued to love and watch the minor child when the father was away training. The child’s mother continued to allow the stepmom to share weekends. The child’s mom trusted the stepmom and had her assist in child care. The child’s mom also confided, at times, with the step mom. The mother, at times, had overused prescription medication to impairment and determent [sic] to the ability to properly care for the child. The stepmom willingly assisted and cared for the child. This witness also observed bruises that began after The Mother began living with her current boyfriend.
Under the circumstances, we cannot say that the error in allowing this witness to appear by telephone over Mother’s objection was harmless. Accordingly, we reverse and remand for a new hearing.
REVERSED and REMANDED.
PALMER and JACOBUS, JJ., concur.

. Father filed no brief in this appeal and offers no contrary argument.